**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

JUSTIN S. ASHLEY,

    Plaintiff,

v.

RONNIE SHUEMAKE; CARLTON MURPHY; and CALO WATKINS,[1]

    Defendants.

CIVIL ACTION NO.: 6:15-cv-53

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff is currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia. He filed this cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement at GSP. (Doc. 16.) After the requisite frivolity review, the Court ordered that Plaintiff's Complaint be served on Defendant Ronnie Shuemake, a sergeant at GSP, and Defendants Murphy and Watkins, correctional officers at GSP. (Id.) Defendants filed a Motion to Dismiss, (doc. 23), but Plaintiff filed a subsequent Amended Complaint, (doc. 27). In response, Defendants filed another Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies, lack of physical injury, failure to state a claim, and qualified immunity. (Doc. 29.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss. The Court should **DENY** Defendants' Motion to Dismiss as to Plaintiff's First Amendment retaliation claims, failure to intervene claims against Defendants Shuemake and Watkins, supervisor liability claim against

---

[1] In their Motion to Dismiss Plaintiff's Amended Complaint, (doc. 29), Defendant Ronnie Shuemake corrected his name. Accordingly, the Clerk is AUTHORIZED and DIRECTED to change the name of Defendant Ronnie Shumake to Ronnie Shuemake upon the docket and record of this case.

Defendant Shuemake, and Defendants' qualified immunity arguments. Additionally, the Court should **GRANT** Defendant's Motion and **DISMISS** Plaintiff's claims as to the Fourteenth Amendment due process claims, excessive force claims against Defendants Shuemake and Watkins, failure to intervene claims against Defendant Murphy, and all deliberate indifference claims. The Court should also **DISMISS WITHOUT PREJUDICE** Plaintiff's claims for compensatory and punitive damages.

## BACKGROUND[2]

Plaintiff filed his original Complaint against Defendants on May 18, 2015. (Doc. 1.) Plaintiff's Amended Complaint—filed on March 18, 2016—seeks to drop all official capacity claims against Defendants and to add two additional claims, a Fourteenth Amendment Due Process violation claim and an Eighth Amendment deliberate indifference to medical needs claim. Both Complaints allege a similar set of facts. On October 1, 2014, Plaintiff spoke to Warden Toole about the prison denying him access to the law library and legal materials, and the opportunity to finish a correspondence course for his high school diploma. (Doc. 27, p. 2.) After getting a dissatisfactory response from Warden Toole, Plaintiff started to voice his complaints through his cell door. Plaintiff contends at this point that Defendant Watkins stated on camera that "'force would be used' because he had asked the Plaintiff to 'cuff up twice,'" when he allegedly never told the Plaintiff to cuff up at all. (Id. at p. 3.) Defendant Murphy then opened Plaintiff's tray flap and sprayed Plaintiff with pepper spray. (Id.) Plaintiff contends that Defendants did not allow him to sufficiently wash the spray off before placing him back in his cell—which had not been cleaned of pepper spray residue. (Id. at p. 8.) Plaintiff states that the

---

[2] The Court takes the following facts from Plaintiff's Complaint and assumes them to be true, as it must at this stage.

2

spray and spray residue caused his lungs, skin, and chest to burn, and that he was in "excruciating agony and pain for 10 to 15 minutes." (Id. at p. 9.)

## DISCUSSION

**I.      Whether Plaintiff Failed to Exhaust his Administrative Remedies as to his First Amendment Retaliation Claims**

Defendants argue that Plaintiff's First Amendment retaliation claims should fail because Plaintiff did not appropriately exhaust the administrative remedies available to him. Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit"). Additionally, the Supreme Court recently "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y

3

for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

### A. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of

administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. However, it is the defendant's burden to prove that the plaintiff has failed to exhaust his available administrative remedies. Id. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**B.     Assessment of Plaintiff's Exhaustion**

At this stage, Defendants have not satisfied the Turner two-step test for dismissal based on failure to exhaust. Defendants argue that Plaintiff failed to exhaust and "did not allow the Georgia Department of Corrections to address his First Amendment retaliation claims prior to filing suit," because "[n]owhere in the grievance did Plaintiff assert that force was used in retaliation for Plaintiff's voicing complaints concerning the conditions of his confinement." (Doc. 23-1, pp. 7–8.) However, Plaintiff clearly states in his prison grievance filed on October 2, 2014, that "after exercising [his] First Amendment rights to 'Freedom of Speech' from behind a locked and secured cell door," Defendants opened his tray flap and then sprayed him with "an extended burst/s of O.C." (Doc. 23-2, p. 29). As is, the record currently reads that after Plaintiff made some form of speech, Defendants, seemingly without provocation, began to use excessive

5

force on Plaintiff—which Plaintiff does appropriately complain about in his grievance. Although Plaintiff's statement about exercising his First Amendment rights may seem conclusory, he met the specificity requirements laid out by GSP. Plaintiff appropriately included the "dates, names of persons involved, and witnesses." (Id.) Furthermore, the Eleventh Circuit has held that "[t]he exhaustion requirement, allowing prison officials to address complaints in the first instance, is satisfied as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident." Maldonado v. Unnamed Defendant, No. 15-10867, 2016 WL 1637981, at *11 (11th Cir. Apr. 26, 2016). Therefore, the Court should **DENY** this portion of Defendant's Motion to Dismiss.

## II. Whether Plaintiff May Recover Punitive and Compensatory Damages

Defendants argue that the minimal nature of Plaintiff's alleged injuries prevents him from recovering punitive or compensatory damages. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to

6

recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." (internal citations omitted) (alterations in original). Consequently, a prisoner who has not suffered more than *de minimis* physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011). "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir. 2002). "The meaning of the phrase 'greater than *de minimis*,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009).

The Eleventh Circuit has held that courts should dismiss an inmate's punitive and compensatory damages claims under Section 1997e(e) without prejudice to allow an inmate to refile his claims when and if he is released. Harris v. Garner, 216 F.3d 970, 980 (11th Cir. 2004). Additionally, "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Williams, 347 F. App'x at 436 (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d at 1271; see also Smith v. Barrow, No. CV

311-044, 2012 WL 6519541, at *5 (S.D. Ga. Nov. 9, 2012), *report and recommendation adopted*, No. CV 311-044, 2012 WL 6522020 (S.D. Ga. Dec. 13, 2012) ("Nominal damages are available for violations of the First Amendment.")).

In this case, Plaintiff alleges the typical effects associated with pepper spray. He contends that he had trouble breathing, burning in his lungs, skin, and chest. Plaintiff states in both his Complaint and Objection that he was in "excruciating agony and pain for 10 to 15 minutes then again experienced a lower level of pain . . . for an indeterminate amount of time." (Doc. 27, p. 9; Doc. 32, p. 18.) However, several courts have held that such conditions do not satisfy Section 1997e(e)'s physical injury requirement. See, e.g., Jennings v. Mitchell, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that prisoner who suffered the discomfort of pepper spray had shown only *de minimis* injury, insufficient to satisfy § 1997e(e)); Wilkerson v. Bryson, No. 6:16-CV-4, 2016 WL 796127, at *7 (S.D. Ga. Feb. 29, 2016), *report and recommendation adopted*, No. 6:16-CV-4, 2016 WL 1258959 (S.D. Ga. Mar. 28, 2016) (dismissal of compensatory and punitive damages claims based on injuries from pepper spray under Section 1997e(e)); Kirkland v. Everglades Corr. Inst., No. 12-22302-CIV, 2014 WL 1333212, at *6 (S.D. Fla. Mar. 31, 2014) ("If [plaintiff] experienced temporary chemical burns and minor respiratory problems from exposure to a chemical agent, he then sustained only minor, physical injuries from the chemical spray."); Gardner v. Cty. of Baldwin, No. CIV.A. 12-0281-CG-C, 2014 WL 171839, at *13 (S.D. Ala. Jan. 15, 2014) ("[P]laintiff's injuries appear to be the typical physical response to being sprayed with pepper spray."); Thompson v. Quinn, No. 3:11cv533/RV/EMT, 2013 WL 2151715, at *12 (N.D. Fla. May 16, 2013) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where only allegation of physical injury was burning sensation on his body); Robinson v. Tifft, No.

8

3:11cv560/LAC/CJK, 2012 WL 2675467, at *2 (N.D. Fla. June 1, 2012) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where he alleged he suffered "involuntary closing and burning sensation" in his eyes and was temporarily blinded); Kornagay v. Burt, No. 3:09cv281/LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where prisoner alleged he suffered burning lungs and skin, congested breathing, tearing eyes, nasal discharge, dizziness, the sensation of respiratory distress, choking, and burns to his scalp); see also Quinlan v. Personal Trans. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009) (unpublished) (pretrial detainee's complaints of a headache for several hours after being denied use of his asthma inhaler, difficulty breathing, temporary chest pain, and lingering back pain that caused him to walk hunched over, which resulted from him being transported in a smoked-filled van while handcuffed, were not greater than *de minimis* and therefore did not provide the necessary physical injury to recover for mental and emotional injuries). In line with these cases, the injuries that Plaintiff suffered do not pass the PLRA's bar for compensatory and punitive damages.

Plaintiff has not alleged that he suffered more than a *de minimis* physical injury due to Defendants' alleged constitutional violations. Accordingly, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's claims for compensatory and punitive damages **without prejudice** pursuant to 42 U.S.C. § 1997e(e). However, Section 1997e(e) does not bar Plaintiff's claims for nominal damages.

**III. Whether Plaintiff States Plausible Claims for Relief Against Defendants**

  **A. Standard of Review**

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Iqbal, 556 U.S. at 678.

  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

  **B. Whether Plaintiff States a First Amendment Retaliation Claim**

Plaintiff has alleged enough in his complaint to assert a First Amendment retaliation claim. Defendants state that Plaintiff "has not pled non-conclusory factual allegations plausibly suggesting the Defendants retaliated against him in violation of his First Amendment rights." (Doc. 23-1, p. 11.) However, at the pleading stage, Plaintiff is only required to provide a "short

and plain statement of the claim . . . ." Fed. R. Civ. P. 10.  He must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  He must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Plaintiff has more than done that in his Complaint.  He alleges that Defendants retaliated against him after he complained about not being able to complete his correspondence course and his inability to keep law books in his cell.  Although Defendants argue that Plaintiff makes no specific allegations against Defendants Watkins and Shuemake, Plaintiff's Amended Complaint alleges enough to indicate that both parties assisted in recording the use of force, taking Plaintiff out of the cell, and in providing an incomplete decontamination in response to Plaintiff exercising his First Amendment rights.  (Doc. 27, p. 11.) Therefore, the Court should **DENY** this portion of Defendant's Motion to Dismiss.

### C. Whether Plaintiff States a Fourteenth Amendment Due Process Claim

Plaintiff did not previously allege a Fourteenth Amendment Due Process violation, but does so in his Amended Complaint.  However, as Defendants argue, Plaintiff only makes conclusory assertions that Defendants violated his Due Process Clause protections against deprivations of life, liberty, or property without due process of law.  (Doc. 23-1, pp. 13–14.) Plaintiff simply states in his Complaint, "Defendant Shumake [sic] also violated Plaintiff's Fourteenth Amendment Rights under 'Due Process.'"  (Doc. 27, p. 13.)  However, he provides no facts regarding the deprivation of any protected liberty or property interest without due process of law.  The Court should **GRANT** this portion of Defendant's Motion and **DISMISS** Plaintiff's Fourteenth Amendment Due Process claims.

### D. Whether Plaintiff States an Excessive Force Claim Against Defendants Watkins and Shuemake

Defendants argue that Plaintiff's excessive force claims as to Defendants Watkins and Shuemake are invalid because Plaintiff "has not asserted any factual allegations demonstrating that Defendant Watkins and Shuemake used any form of physical force against him, much less that they used excessive force." (Doc. 29-1, p. 13.) Plaintiff's Complaint only indicates that Defendant Murphy was the person who sprayed Plaintiff with the pepper spray. "In a § 1983 suit . . . each Government official . . . is only liable for his or her own misconduct." Iqbal, 556 U.S. at 678. Although Plaintiff states that Defendants were working in concert, he makes no allegations that Defendants Watkins or Shuemake used excessive force on him during the incident. Accordingly, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's Eighth Amendment excessive force claims against Defendants Watkins and Shuemake.

### E. Whether Plaintiff States a Failure to Intervene Claim

Defendants correctly argue that Plaintiff fails to allege facts supporting a failure to intervene claim against Defendant Murphy. (Doc. 23-1, p. 14; Doc. 34, p. 13.) Plaintiff's main allegations against Defendant Murphy are for his use of excessive force with the pepper spray. He makes no allegations that Defendant Murphy witnessed any other officer using excessive force against Plaintiff and that he was in a position to intervene, but failed to do so. As such, Plaintiff's failure to intervene claim against Defendant Murphy should not survive Defendants' Motion to Dismiss.

However, Plaintiff's failure to intervene claims against Defendants Shuemake and Watkins can proceed. At the 12(b)(6) motion to dismiss stage, a plaintiff need only allege enough facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, the Court must "accept[ ] the allegations in the complaint as true and constru[e]

them in the light most favorable to the plaintiff." Belanger, 556 F.3d at 1155. Although Plaintiff's Amended Complaint does not state exactly where Defendants were standing, he indicates that they knew of the use of force and were close enough to assist with stripping him down and taking him out of his cell afterwards. At this stage, taking Plaintiff's pleading as true, Defendants Watkins and Shuemake were allegedly in a position to intervene during Defendant Murphy's use of force.

Based on the reasons above, the Court should **GRANT** Defendants' Motion as applied to Defendant Murphy and **DISMISS** Defendant Murphy's failure to intervene claim. However, the Court should **DENY** Defendants' Motion as applied to Defendants Watkins and Shuemake.

### F. Whether Plaintiff States a Supervisory Liability Claim Against Defendant Shuemake

Again, using the 12(b)(6) motion to dismiss standard, Plaintiff need only allege facts that provide a plausible claim for relief. Wooten, 626 F.3d at 1196 (11th Cir. 2010). Although Defendants assert that Plaintiff only makes conclusory statements about Defendant Shuemake's supervisory liability, Plaintiff actually alleges enough facts to pass the plausibility bar required for pleadings. Plaintiff does not solely allege that Defendant Shuemake is liable based on a theory of *respondeat superior*; instead, Plaintiff alleges facts that Defendant Shuemake was involved in and in a position to control the alleged use of excessive force. Gilmere v. City of Atlanta, 774 F.2d 1495, 1504 (11th Cir. 1985). The Court should **DENY** this portion of Defendant's Motion.

### G. Whether Plaintiff States an Eighth Amendment Deliberate Indifference Claim

Plaintiff alleges in his Amended Complaint that Defendants were deliberately indifferent to his medical needs after spraying him with pepper spray. In order to prove a deliberate indifference claim, a detainee must overcome three obstacles. The detainee must: 1) "satisfy the

13

objective component by showing that [he] had a serious medical need;" 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need;" and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)) (emphasis supplied).

As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. "The meaning of 'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id.

Defendant argues that the normal and transitory effects of pepper spray do not constitute a serious medical need. (Doc. 23-1, p. 20). However, the Eleventh Circuit has held that "the effects of prolonged exposure to pepper spray with inadequate decontamination and poor ventilation" can be considered deliberate indifference to a serious medical need. Danley v. Allen, 540 F.3d 1298, 1311 (11th Cir. 2008), *overruled on other grounds by* Iqbal, 556 U.S. 662. Unlike the Plaintiff in Danley though, the Plaintiff here did not indicate that the spray residue

14

was so strong other prisoners were affected, that he was in excruciating pain and had trouble breathing for over 12 hours, or that he "almost blacked out because of the breathing difficulties he had been having for the prior twelve-plus hours." (Id. at 1304). In fact, Plaintiff gives no indication that the effects were anything other than transitory. (Doc. 27, p. 9). Although Plaintiff states that he suffered "excruciating" pain, he then says that after ten to fifteen minutes he experienced a "lower level of pain." (Id.) Additionally, Plaintiff states that he was able to breathe more easily after simply burping. (Id.) Thus, in contrast to the situation described in Danley, Plaintiff has not plausibly alleged that he had a serious medical need. Consequently, he fails to establish a basic element of his deliberate indifference claim. For these reasons, the Court should **GRANT** Defendants' Motion and **DISMISS** any claims regarding deliberate indifference to Plaintiff's medical needs.

## IV. Whether Defendants are Entitled to Qualified Immunity

Defendants invoke the doctrine of qualified immunity in their Motion to Dismiss. (Doc. 23-1, pp. 23–24.) Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation[.]" Id. at 1194. "Qualified immunity should be applied at the earliest possible stage of litigation, and it is therefore appropriate to decide its applicability on a motion to dismiss. Often however, this is not possible, and for this reason it is more typically addressed at summary judgment." Horn v. Jones, No. 14-20341-CIV, 2015 WL 3607012, at *6 (S.D. Fla. May 8,

2015); see also Marshall v. Fla. Dep't of Corr., No. 10–20101–cv, 2011 WL 1303213, at *4 (S.D. Fla. March 31, 2011) ("[W]here it is not evident from the allegations of the complaint alone that a defendant is entitled to qualified immunity, the case will proceed to the summary judgment stage, *the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation*.") (emphasis in original) (citation omitted).

To receive qualified immunity, Defendants must first establish that they were acting within their discretionary authority during the events in question. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill, 40 F.3d at 1185 n.17. Once the government official has shown that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). Here, Defendants were acting within their respective discretionary duties as correctional officers when making decisions relevant to Plaintiff's claims.

Thus, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity. Cottone, 326 F.3d at 1358. To make this showing, Plaintiff must first establish the violation of a constitutional right on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001); Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). As explained in Section III above, Plaintiff has alleged conduct by Defendants that, if proven true, plausibly establishes a violation of Plaintiff's Eighth Amendment and First Amendment rights. Consequently, his Complaint satisfies the first qualified immunity prong.

Having alleged a constitutional violation, Plaintiff must demonstrate that the constitutional right was clearly established at the time of the alleged misconduct. Saucier, 533 U.S. at 200.[3] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999). "The 'very action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law." Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Moreover, in the Eleventh Circuit, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." Skrtich, 280 F.3d at 1301 (citing Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002)). Likewise, a reasonable correctional officer would know that he violates an inmate's rights when he fails to intervene during a fellow officers' use of excessive force against the inmate. See Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]" (alterations in original)) (citing Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998)). Similarly, the Eleventh Circuit has held that prison officials are not entitled to qualified immunity for First Amendment retaliation claims. See Hicks v. Ferrero, 241 F. App'x

---

[3] The Supreme Court has clarified, however, that courts need not analyze these qualified immunity steps sequentially. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

17

595, 598 (11th Cir. 2007) (prison officials receive no qualified immunity after retaliating against a prisoner for exercising his First Amendment free speech rights).

The Court is not concluding today that Defendants did in fact retaliate against Plaintiff for exercising his First Amendment rights, or that Defendant Murphy used unjustified force while Defendants Shuemake and Watkins failed to intervene during that alleged use of force. On the record before the Court, we cannot know. However, if the Court accepts Plaintiff's factual allegations as true, as it must, then the actions that Defendants allegedly took were, "in the light of the preexisting law—beyond what the Constitution would allow under the circumstances." Pourmoghani–Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir. 2010). For these reasons, the Court should **DENY** this portion of Defendants' Motion.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss. The Court should **DENY** Defendants' Motion to Dismiss as to Plaintiff's First Amendment retaliation claims, failure to intervene claims against Defendants Shuemake and Watkins, supervisor liability claim against Defendant Shuemake, and Defendants' qualified immunity arguments. However, the Court should **GRANT** Defendants' Motion and **DISMISS** Plaintiff's claims as to the Fourteenth Amendment due process claims, excessive force claims against Defendants Shuemake and Watkins, failure to intervene claims against Defendant Murphy, and all deliberate indifference claims. The Court should also **DISMISS WITHOUT PREJUDICE** Plaintiff's claims for compensatory and punitive damages.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and

Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of July, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA